IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | C.R. NO. H-07-0100 |
| | § | |
| GAYLE ROTHENBERG | § | |
| SAUL GOWER | § | |

ORDER ON PENDING MOTIONS

Pending is Defendants' Motion to Dismiss Mail Fraud Counts (Document No. 20), which is opposed by the United States, and on which the Court heard oral arguments at a pretrial conference on June 8, 2007.

Defendants contend that the charges of mail fraud under 18 U.S.C. § 1341 must be dismissed because "Congress has determined that fraud crimes involving drugs regulated by the FDA must be prosecuted under the Food, Drug and Cosmetic Act ("FDCA")." Doc. No. 20 at 1. In effect, Defendants contend that the FDCA impliedly supersedes and abrogates 18 U.S.C. § 1341 to the extent they overlap. Id. at 1, 9-12. Contrary to Defendants' view, a more specific criminal statute does not supersede and impliedly repeal an earlier, general one simply because the conduct alleged may violate both. See United States v. Smith, 915 F.2d 959, 962 (5th Cir. 1990) (holding 18 U.S.C. § 510, providing the misdemeanor offense of forging a Treasury check, did not preclude felony prosecution for forging any "writing" under 18 U.S.C. § 495); United States v. Cavada, 821 F.2d 1046, 1048 (5th Cir. 1987)(same);

United States v. Green, 494 F.2d 820, 827 (5th Cir. 1974)(upholding mail fraud charge though defendant's alleged unauthorized use of a credit card also violated 18 U.S.C. § 1644).  This is true even if the penalties prescribed in the earlier statute are more severe than those in the later enactment.  *See* United States v. Batchelder, 99 S. Ct. 2198, 2203 (1979) ("[I]t is not enough to show that the two statutes produce differing results when applied to the same factual situation.  Rather, the legislative intent to repeal must be manifest in the positive repugnancy between the provisions.") (citations and internal quotations omitted); United States v. Tomeny, 144 F.3d 749, 750, 753 (11th Cir. 1998) (holding that the misdemeanor penalty for false statements prescribed in the Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. § 1857(1)(I), does not preempt felony prosecution under the general false statement statute, 8 U.S.C. § 1001); United States v. Mitchell, 39 F.3d 465, 474 (4th Cir. 1994) (concluding the Endangered Species Act and Agriculture regulations providing for misdemeanor penalties did not preempt felony prosecution under 18 U.S.C. § 545); United States v. Hopkins, 916 F.2d 207, 218-19 (5th Cir. 1990)(rejecting the contention that the defendants should have been prosecuted for a misdemeanor violation of the election laws and not for violating a felony statute governing fraud, concealment, and misapplication of funds of institutions insured by the FSLIC); Cavada, 821 F.2d at 1048 (5th Cir. 1987).

Additionally, "'repeals by implication are not favored' and will not be presumed unless the 'intention of the legislature to repeal [is] clear and manifest.'" Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 127 S. Ct. 2518, 2532 (2007) (quoting Watt v. Alaska, 101 S. Ct. 1673, 1678 (1981)); *accord* Cavada, 821 F.2d at 1047 & n.3 (citing Watt and noting the presumption against implied repeals). "Even if two statutes conflict to some degree, they must be read to give effect to each, if that can be done without damage to their sense and purpose, unless there is evidence either in the text of the statute or its legislative history that the legislature intended to repeal the earlier statute and simply failed to do so expressly." Cavada, 821 F.2d at 1048; *see also, e.g.*, United States v. Borden Co., 60 S. Ct. 182, 188 (1939); United States v. Jackson, 805 F.2d 457, 460-61 (2d Cir. 1986).

The starting point is the language of the statutes themselves. *See* United States v. Anderez, 661 F.2d 404, 406 (5th Cir. 1981). The mail fraud statute provides, in pertinent part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, . . . shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1341. Thus, "[t]o sufficiently charge the offense of mail fraud, the indictment must allege that (1) the defendant devised or intended to devise a scheme to defraud, (2) the mails were used for the purpose of executing, or attempting to execute, the scheme, and (3) the falsehoods employed in the scheme were material." United States v. Ratcliff, 488 F.3d 639, 643-44 (5th Cir. 2007).

Section 331(k) of the FDCA prohibits

> [t]he alteration, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling of, or the doing of any other act with respect to, a food, drug, device, or cosmetic, if such act is done while such article is held for sale (whether or not the first sale) after shipment in interstate commerce and results in such article being adulterated or misbranded.

21 U.S.C. § 331(k). Liability for misbranding of drugs therefore requires the commission of (1) an act which results in the drug being misbranded (2) while the drug is held for sale "after shipment in interstate commerce." United States v. Sullivan, 68 S. Ct. 331, 335 (1948). A drug is deemed to be "misbranded" if, among other things, "it is offered for sale under the name of another drug." 21 U.S.C. § 352(i)(3). Although a violation of § 331 without knowledge or wrongful intent is a misdemeanor, *see* 21 U.S.C. § 333(a)(1); United States v. Park, 95 S. Ct. 1903, 1912 (1975), it is a felony violation if fraudulent intent is proved. *See* 21 U.S.C. § 333(a)(2).

4

Nothing in the text of the FDCA misbranding provisions or § 1341 suggests that their penalties are exclusive, nor does the language of these statutes conflict.  Indeed, as Defendants conceded at the pretrial conference, if <u>Blockburger v. United States</u>, 52 S. Ct. 180, 182 (1932) controls, then Defendants' motion fails because the two statutes' differing elements of proof permit concurrent prosecution under both statutes.  Because the statutory language does support the prosecution of Defendants under both the FDCA and § 1341, only the "starkest manifestation of contrary intent" in the legislative history of the two statutes may overcome the strong presumption against an implied repeal of § 1341 to the extent it overlaps with the FDCA misbranding provisions.  <u>Anderez</u>, 661 F.2d at 407.  Such an intent may be inferred, for example, from statements in the legislative record affirmatively expressing an intent to preclude application of a prior statute.  *See, e.g.*, <u>Simpson v. United States</u>, 98 S. Ct. 909, 913-14 (1978).

The legislative history of the FDCA and that of its precursor, the Pure Food and Drug Act of 1906 ("PFDA"), contain no suggestion of congressional intent to displace the mail fraud statute with regard to use of a private or commercial interstate carrier in the execution of a scheme to misbrand drugs for sale in order fraudulently to obtain money or property from another, let alone any clear or manifest congressional intent to that effect.  This silence indicates that Congress intended the statutes to co-exist,

5

a conclusion consistent with analogous cases in which courts have upheld prosecution for mail fraud although the defendant's fraud also violated a more specific federal law.  *See, e.g.*, Edwards v. United States, 61 S. Ct. 669, 675 (1941) (Securities Act of 1933); United States v. Computer Sciences Corp., 689 F.2d 1181, 1187-88 (4th Cir. 1982) (false claims to the government under 18 U.S.C. § 287), *overruled on other grounds by* Busby v. Crown Supply, Inc., 896 F.2d 833 (4th Cir. 1990); United States v. Brien, 617 F.2d 299, 309-11 (1st Cir. 1980) (anti-fraud provisions of the Commodities Futures Trading Act); United States v. Melvin, 544 F.2d 767, 776 (5th Cir. 1977)(Jenkins Act); Green, 494 F.2d at 826-27 (Truth in Lending Act); *see also, e.g.*, United States v. Maze, 94 S. Ct. 645, 651 (1974) (Burger, J., dissenting) (stressing the importance of the mail fraud statute as a "tool in prosecuting frauds in those areas where legislation has been passed more directly addressing the fraudulent conduct").

Defendants' argument that American School of Magnetic Healing v. McAnnulty, 23 S. Ct. 33 (1902), held "in effect . . . that the mail fraud statutes cannot be utilized to criminalize conduct amounting to misbranding," is not correct.  Document No. 58 at 3. McAnnulty dealt not with the scope of the mail fraud statute, *per se*, but was a civil case filed to challenge the Postmaster General's refusal to deliver mail that contained payments for a mind-body healing program on the basis of allegedly false

representations regarding the product's therapeutic value. McAnnulty, 23 S. Ct. at 35-37 (citing REV. STAT. §§ 3929, 4041 (1875), later codified as 39 U.S.C. §§ 259, 732 (1946), now codified as 39 U.S.C. §§ 3001, 3005).[1]  Noting that differing opinions existed as to the effectiveness of curing disease through exercise of the mind, the Court concluded

> the efficacy of any special method is certainly not a matter for the decision of the Postmaster General within these statutes relative to fraud.  Unless the question may be reduced to one of fact, as distinguished from mere opinion, we think these statutes cannot be invoked for the purpose of stopping the delivery of mail matter.

Id. at 37-38.

According to Defendants, McAnnulty effectively exempted therapeutic claims from prosecution as mail fraud, thus creating a regulatory "gap" to which Congress responded by adopting the misbranding provisions of the PFDA.  Document No. 20 at 10; Document No. 58 at 2-4.  Nevertheless, even if McAnnulty precipitated the enactment of the PFDA, it is nonetheless true that all new statutes, to a greater or lesser degree, are promulgated to redress problems perceived to have been inadequately addressed by existing law.  Thus, "[a] Congressional intent to bridge gaps in an

---

[1] Federal law authorized the Postmaster General to return to the postmasters any mailings directed at any person who, "is engaged in . . . any [ ] scheme or device for obtaining money through the mails by means of false or fraudulent pretenses, representations, or promises." Id. at 35 n.† (quoting REV. STAT. § 3929).

7

earlier statute by enacting a later statute is not indicative of intent to supersede the earlier statute." Jackson, 805 F.2d at 462 (rejecting the argument that 18 U.S.C. § 510, which specifically penalizes the forging of endorsements on Treasury checks, supersedes 18 U.S.C. § 641, which prohibits the conversion of "any record, voucher, money, or thing of value of the United States"). Given the strong presumption against implied repeals, the enactment of the PFDA allegedly in response to case law limiting the scope of § 1341 does not constitute a clear and manifest intent to override § 1341 as applied to the misbranding of drugs.[2]

For the same reasons, the Court rejects Defendants' additional suggestion that the FDCA's remedies were intended to be exclusive

---

[2] Even if the Court were to accept Defendants' reasoning, the extent to which the PFDA would have supplanted prosecution for mail fraud would reach only as far as the holding in McAnnulty itself. In this case, however, the indictment does not allege that Defendants misrepresented the *efficacy* of the treatment given to patients, such as the conduct addressed in McAnnulty, but rather that Defendants knowingly misrepresented the *identity* of the treatment given--i.e., that the substance offered to and used on patients was FDA-approved Botox when in fact it was not. It has long been held, even before McAnnulty, that a knowing misrepresentation of fact such as that alleged in the indictment falls squarely within the purview of the mail fraud statute. *See, e.g.*, Durland v. United States, 16 S. Ct. 508, 511 (1896) (interpreting the mail fraud statute to reach "everything designed to defraud by representations as to the past or present, or suggestions and promises as to the future" if made with fraudulent intent and purpose). Thus, to the extent that McAnnulty arguably exposed a regulatory "gap" in § 1341 intended to be filled by the PFDA, it had no impact on the mail fraud statute as applied to fraudulent representations regarding the identity of drugs. It follows that the post-McAnnulty adoption of the PFDA does not suggest that the conduct alleged in the indictment can only be prosecuted under the FDCA.

because the mail fraud statute in effect in 1906 when the PFDA was enacted did not reach the shipment of misbranded drugs via private interstate mail carriers.  Document No. 58 at 2-3.  Notably, Congress closed this gap in 1994 by amending § 1341 to include frauds advanced through use of private mail carriers.  <u>United States v. Marek</u>, 238 F.3d 310, 318 (5th Cir. 2001)(citing the 1994 amendment and interpreting it to reach all private mail carriers that engage in interstate deliveries).  Thus, the fact that the scope of the FDCA at one time exceeded that of § 1341 with respect to the fraudulent misbranding of drugs shipped by private mail carriers does not equate to a congressional intent affirmatively to exclude from prosecution under § 1341 all fraudulent acts of misbranding in which mail carriers are used in violation of the current statute.

Based on <u>Dowling v. United States</u>, 105 S. Ct. 3127 (1985), Defendants also attempt to craft an argument for dismissal of the mail fraud counts. <u>Dowling</u> decided the narrow question of whether the National Stolen Property Act, 18 U.S.C. § 2314, reached the interstate transportation of thousands of bootleg Elvis Presley albums, all of which were "'stolen, converted or taken by fraud' only in the sense that they were manufactured and distributed without the consent of the copyright owners of the musical compositions performed on the records." <u>Dowling</u>, 105 S. Ct. at 3129.  The Court observed that cases prosecuted under § 2314 "have

always involved physical 'goods, wares [or] merchandise' that have themselves been stolen, converted or taken by fraud.'"  Id. at 3132.  In contrast, the unique nature of a copyright holder's interest in his work, which is subject to limitations such as the fair use doctrine and compulsory licensing under certain circumstances, is distinguishable from the possessory interest ordinarily enjoyed by an owner of goods, wares, or merchandise. Id. at 3133.  The Court explained:

> The infringer invades a statutorily defined province guaranteed to the copyright holder alone.  But he does not assume physical control over the copyright; nor does he wholly deprive its owner of its use.  While one may colloquially like infringement with some general notion of wrongful appropriation, infringement plainly implicates a more complex set of property interests than does run-of-the-mill theft, conversion or fraud.  As a result, it fits but awkwardly with the language Congress chose--"stolen, converted or taken by fraud"--to describe the sorts of goods whose interstate shipment § 2314 makes criminal.

Id.

After concluding that § 2314 was facially ill-suited to punish copyright infringement the court examined the legislative history of § 2314 and the Copyright Act for evidence of a congressional intent to punish acts of copyright infringement under § 2314.  Id. at 3134.  Only after finding such evidence wanting, and stressing the far-reaching consequences of adopting the government's expansive reading of § 2314, did the court apply the rule of lenity

in reversing the defendant's conviction under § 2314.  Id. at 3138-39.

Unlike Dowling, the conduct alleged in Counts 2-9 is well within the "reach" of the mail fraud statute, namely, Defendants' conduct to enrich themselves by a scheme or artifice to defraud and obtain money and property from patients by causing vials of a non-Botox substance to be delivered to Defendants by private or commercial interstate carrier, which they then sold by falsely representing to patients that they were receiving injections of FDA-approved Botox.  This is by no means an "awkward" fit under the statute, but rather, one example of myriad ways in which one may by "trick, deceit, chicane or overreaching" seek to deprive persons of money or property in violation of § 1341 and use the mails in accomplishing the fraud.  McNally v. United States, 107 S. Ct. 2875, 2881 (1987), *superseded by statute*, Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, § 7603(a), 102 Stat. 4508, *now codified as* 18 U.S.C. § 1346; *see also* Durland, 16 S. Ct. at 511 (interpreting § 1341 to encompass "everything designed to defraud" so long as the misrepresentations were made with the requisite intent to defraud); United States v. Toney, 605 F.2d 200, 205 (5th Cir. 1979)("To show a scheme to defraud [within the meaning of § 1341], all that must be shown is that the scheme is 'reasonably calculated to deceive persons of ordinary prudence and comprehension.'") (quoting United States v. Netterville, 553 F.2d

11

906, 909 (5th Cir. 1977), *cert. denied*, 98 S. Ct. 719 (1978)). Section 1341 proscribes frauds advanced by way of private interstate commercial mail, such as delivery by UPS of the non-Botox substance that Defendants allegedly sold to their patients as Botox. *See* 18 U.S.C. § 1341; Marek, 238 F.3d at 318. In arguing for the rule of lenity applied in Dowling, Defendants bypass the first and critical step in the Dowling analysis, namely, determining whether § 1341 unambiguously encompasses Defendants' alleged conduct. Because § 1341 does unambiguously proscribe Defendants' alleged conduct, the subsequent Dowling steps need never be reached.

In sum, the FDCA misbranding provisions and § 1341 serve different purposes, require different elements of proof, and "can exist and be useful, side by side." Edwards, 61 S. Ct. at 675. Whereas the broader mail fraud statute seeks to deter fraud by preventing use of the mail to perpetuate any "scheme to defraud" of money or property, *see* McNally, 107 S. Ct. at 2879-80; Kann v. United States, 65 S. Ct. 148 (1944)(discussing the statute's emphasis on the mailing element), the FDCA misbranding provision protects public health by prohibiting the sale of misbranded drugs even after interstate shipment, *see* Medtronic, Inc. v. Lohr, 116 S. Ct. 2240, 2246 (1996)(discussing the public health objectives behind the FDCA and its precursor, the PFDA). Because § 1341 squarely encompasses the conduct alleged in the indictment, and

because there is no showing, much less the requisite extraordinary showing, of congressional intent to overcome the presumption against an implied repeal of § 1341 by the FDCA, Defendants are properly subject to prosecution for mail fraud under § 1341. Accordingly, the motion is denied.

Also pending are Defendant Rothenberg's Opposed Motion for Severance (Document No. 27) and Defendant Gower's Motion for Severance (Document NO. 49), both of which are opposed by the United States. Defendants in their motions, and again at the pretrial conference, were not able to articulate any specific conflicts between Defendants or other reason for severance. Two months have now passed since the pretrial conference and Defendants still have not advanced any specific reason for severance or requested action on these motions. The trial is set to begin in less than a month. Accordingly, both Motions for Severance are DENIED.

It is so ORDERED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, this __7th__ day of August, 2007.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE